UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.  18-80111-CR-Rosenberg

UNITED STATES OF AMERICA,

    Plaintiff,
v.

ERIC SNYDER,

    Defendant.
_____/

## **REPORT AND RECOMMENDATION ON MOTIONS IN LIMINE**

Before the Court for decision are the following motions:

- Defendant Fuller's Motion in Limine to Exclude 404(b) Evidence.  DE 175.

- Defendant Lubowitz's Motion to Exclude Speculative Testimony Regarding Knowledge of Criminal Activity of Others.  DE 176.

- Defendant Snyder's Motion to Exclude "Expert" Testimony of Dr. Kelly Clark.  DE 183.

- Defendant Snyder's Motion to Exclude 404(b) Evidence.  DE 187.

- Government's Omnibus Motion in Limine.  DE 189.

All of these motions were referred to the undersigned by the Hon. Robin L. Rosenberg.  DE 200, 201.  The Court held oral argument on June 26, 2018, at which the parties agreed that Fuller's Motion in Limine (DE 175) and Lubowitz's two motions (DE 176, 178), all of which had been adopted by Snyder (DE 188, 198), were now moot.

### *Rule 404(b) Evidence*

Snyder moves to exclude certain evidence under Federal Rule of Evidence 404(b).  DE 187.  Federal Rule of Evidence 404(b) allows the admission of evidence of prior crimes, wrongs,

1

or other acts so long as the evidence is not offered "to prove a person's character in order to show that on a particular occasion the person acted in accordance with that character." Fed. R. Evid. 404(b)(1). If the defendant makes a timely request, the Government must, prior to trial, "provide reasonable notice of the general nature of any such evidence that the prosecutor intends to offer at trial." Fed. R. Evid. 404(b)(2). Local Rule 88.10(h) requires the Government to "advise the defendant(s) of its intention to introduce extrinsic act evidence pursuant to Federal Rule of Evidence 404(b). The government shall provide notice regardless of how it intends to use the extrinsic evidence at trial, i.e., during its case-in-chief, for impeachment, or for possible rebuttal. Furthermore, the government shall apprise the defense of the general nature of the evidence of the extrinsic acts." S.D. Fla. Local Rule 88.10(h), DE 63 (Standing Discovery Order incorporating Local Rule 88.10).

"For evidence of other crimes or acts to be admissible under Rule 404(b): (1) it must be relevant to an issue other than the defendant's character; (2) there must be sufficient proof to enable a jury to find by a preponderance of the evidence that the defendant committed the act in question; and (3) the probative value of the evidence cannot be substantially outweighed by undue prejudice, and the evidence must satisfy Rule 403." *United States v. Gil*, 581 F. App'x 766, 771 (11th Cir. 2014). "And evidence is inextricably intertwined with the evidence regarding the charged offense if it forms an 'integral and natural part of the witness's accounts of the circumstances surrounding the offenses for which the defendant was indicted.'" *United States v. Edouard*, 485 F.3d 1324, 1344 (11th Cir. 2007) (citing *United States v. Foster,* 889 F.2d 1049, 1053 (11th Cir.1989).

The Government provided a written Notice of Rule 404(b) Evidence. DE 158. The Government's Notice asserts that the evidence in question is inextricably intertwined with the charges in the Indictment, or alternatively is admissible under Rule 404(b) to establish intent,

2

knowledge, plan, identity, and absence of mistake. *Id.* at 1.  The Government seeks to introduce evidence that Snyder solicited and received kickbacks in exchange for referring patients from Klean Consulting Group, LLC, to addiction treatment centers.  The Government further seeks to introduce evidence that Snyder laundered money from Klean Consulting Group LLC through Halfway There Florida, LLC/Real Life Recovery.  The Indictment alleges that these entities were used to commit the crimes alleged in the Indictment.  The Government's Notice further proposed to introduce evidence that Snyder and Lubowitz solicited and received kickbacks for referring patients from Tri-State Treatment Connections, LLC to addiction treatment centers.

Snyder lodges two specific objections.  First, he challenges the sufficiency of the 404(b) Notice, asserting that it fails to contain sufficient details: "The Government's Notice of Rule 404(b) Evidence fails to identify the dates, frequency or patients involved in the alleged conduct.  Although referencing 'sham consulting agreements' that allegedly were used to hide the arrangements, to Snyder's knowledge, the Government has not produced those writings."  DE 187 at 2.  Second, Snyder alleges that the proposed evidence fails to meet the requirements for admissibility under Rule 404(b).  Snyder requests that the Court (1) "require the Government to provide a specific proffer of the evidence it actually seeks to introduce," and (2) conduct a hearing so that Snyder may fully understand the scope of the proposed evidence."  DE 187 at 3.

The Government responds that its 404(b)/inextricably intertwined evidence is "not complicated.  The Government alleges that the Defendants recruited patients and/or paid and received kickbacks at other sober homes and addiction treatment centers besides those charged in the indictment, at or near the same time as the conspiracy period, in the same location (Palm Beach County, FL)."  DE 202 at 22.  In essence, the Government seeks to introduce evidence that the Defendants concurrently executed the same criminal scheme at other locations.

The Court finds that the Government's Notice complies with Rule 404(b) and the Standing Discovery Order. The Notice apprises Snyder of the general nature of the evidence of the extrinsic acts. It identifies the relevant conduct to be soliciting and receiving kickbacks as well as laundering proceeds. It further identifies the specific entities that participated in this conduct. The Government's Omnibus Response represents that the Government has provided the defense with bank records and other documents (including billing records) for entities named in the 404(b) Notice, as well as FD-302 interview reports, grand jury testimony of potential trial witnesses, and insurance billing data. DE 202 at 33. The 404(b) Notice contains sufficient specificity that the defense can discern the relevant evidence from this discovery.

The Court also finds that the proposed evidence is admissible. Without knowing which witnesses the Government will use to introduce this evidence, the undersigned cannot determine whether this evidence is "inextricably intertwined" with other aspects of the Government's evidence; that is, the Court lacks an adequate context to determine if this evidence forms an "integral and natural part of the witness's accounts." Regardless, the Court finds that the proposed evidence is admissible under Rule 404(b). It is relevant to a material issue other than character; it creates a circumstantial inference of intent, absence of mistake, and common plan. The evidence appears to relate primarily to financial transactions. Snyder has not disputed that these transactions (and other related events) actually occurred. Finally, given the geographic and temporal overlap, as well as the similarity of the conduct in question to the conduct alleged in the Indictment, there is not undue prejudice under Rule 403. Any prejudice can be further mitigated through a limiting instruction when the evidence is offered at trial.

***Motion to Exclude Testimony by Dr. Kelly Clark***

4

The Government proposes to call Dr. Kelly Clark as an expert witness on substance abuse treatment and related billing. *See* Govt. Exh. 2 from *Daubert* Hearing; DE 110 (Notice of Intent to Call Expert Witness). Snyder moves to exclude Dr. Clark's testimony in its entirety, pursuant to *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), or in part pursuant to Fed. R. Evid. 403. DE 183. On July 26, 2019, the Court conducted a *Daubert* hearing. The sole witness was Dr. Clark.

Dr. Clark testified that she reviewed 13 patient files from 2013-14, along with laboratory billing records from 2013-15. In sum, she concluded that (1) the treatment provided to the patients did not meet the requisite standard of medical care for the period 2013-15, and (2) excessive and medically unnecessary urinalysis testing was conducted and billed to insurers at unreasonably high rates. Among the factors she relied upon in reaching her conclusions were: (1) the documentation in the medical charts did not substantiate that the urinalysis testing billed to the insurance companies was medically necessary, (2) the medical records did not show that the test results were reviewed and/or were used to guide treatment, (3) medical records relating to the ordering of urinalysis testing appeared to be falsified, (4) medications were routinely prescribed without clinical justification, (5) the amounts billed for individual urinalysis tests were inappropriately high, (6) people without clinical training were signing off on reports. Considering all these factors as a whole, she concluded that Snyder's businesses were not providing legitimate substance abuse treatment. She also identified "indicia of fraud" in the billing records that she reviewed.

The *Daubert* analysis requires the Court to answer three questions. First, is the proposed expert witness qualified to testify competently regarding the subject matter in question? Second, is the methodology used by the expert sufficiently reliable? Third, will the testimony assist the trier of fact, through the application of scientific, technical, or specialized expertise, to understand

the evidence or to determine a fact in issue?  *See United States v. Frazier,* 387 F.3d 1244, 1260 (11th Cir. 2004).  The Court acts as a gatekeeper "to ensure that speculative, unreliable expert testimony does not reach the jury."  *Kilpatrick v. Breg, Inc.,* 613 F.3d 1329, 1335 (11th Cir. 2010) (citing *Daubert*, 509 U.S. at 597, n. 13).  The Court does not assess the witness' credibility or the putative weight of the evidence; "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."  *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.,* 326 F.3d 1333, 1341 (11th Cir. 2003).

The Court finds that Dr. Clark is qualified to testify competently about substance abuse treatment and related billing. Dr. Clark has an MD degree from the University of Wisconsin in 1979, and an MBA from Duke University, with a certificate in health sector management.  She is a psychiatrist who is board certified in addiction medicine and has over 30 years' experience treating patients with addiction issues.  She is the Immediate Past President of the American Society of Addiction Medicine.  She has served as the Medical Director of a health plan, and the Chief Medical Officer of an addiction treatment center.  She also worked in waste, fraud, and abuse prevention at a health plan and at CVS Caremark.  *See generally,* Govt. Ex. 1 (CV of Dr. Kelly Clark).

> As Magistrate Judge Louis has explained:
>
> The qualifications standard for expert testimony is not stringent. "[A] witness who possesses general knowledge of a subject may qualify as an expert despite lacking specialized training or experience, so long as his testimony would likely assist a trier of fact." *Whelan v. Royal Caribbean Cruises Ltd.,* 976 F. Supp. 2d 1328, 1331 (S.D. Fla. 2013). So long as the expert is "minimally qualified, objections to the level of the expert's expertise go to credibility and weight, not admissibility." *Nat'l Union Fire Ins. Co. of Pittsburgh v. Tyco Integrated Sec., LLC,* No. 13-CIV-80371, 2015 WL 11251759, at *1 (S.D. Fla. July 6, 2015) (citing *Clena Investments, Inc. v. XL Specialty Ins. Co.,* 280 F.R.D. 653, 661 (S.D. Fla. 2012)).

*Edmondson v. Velvet Lifestyles, LLC.,* No. 15-CIV-24442, 2018 WL 6807342, at *3 (S.D. Fla. Sept. 24, 2018). Applying this standard, Dr. Clark easily satisfies the qualification prong of the *Daubert* test as it relates to her proposed testimony about medical necessity, standards of care, and billing practices.

The Court finds that Dr. Clark is relying upon a reliable methodology. As she explained, doctors are trained by the maxim, "If it's not in the medical record, it didn't happen." Therefore, it is proper to use the patient's medical record as a starting point to see if the patient's clinical needs justify the patient's treatment (including laboratory testing) and the insurance billing incident to that treatment. Similarly, insurance billing forms are a proper baseline for assessing whether testing frequencies and/or billing rates are inappropriate.

Finally, the Court finds that Dr. Clark's testimony will be helpful to the jury. This prong of the *Daubert* test turns on whether the expert's testimony "concerns matters that are beyond the understanding of the average lay person." *Nat'l Union Fire Ins. Co. Of Pittsburgh v. Tyco Integrated Sec., LLC,* No. 13-CIV-80371, 2015 WL 1125175 at *2 (S.D. Fla. July 6, 2015) (quoting *Edwards v. Shanley,* 580 Fed. App'x 816, 823 (11th Cir. 2014)). The clinical aspects of substance abuse treatment, as well as the associated billing, are not topics within the general knowledge of the average lay person.

Snyder argues in the alternative that, even if Dr. Clark satisfies the *Daubert* standard for some topics, aspects of her proposed testimony as disclosed in her report should be precluded. In particular, Snyder objects to Dr. Clark testifying:

(1) "how substance abuse treatment is supposed to work," or what constitutes "proper substance abuse treatment,"

(2) that Snyder's businesses used urinalysis testing as a profit center,

>   (3) that she identified "indicia of fraud."

DE 183 at 2-3.  Snyder argues that Dr. Clark should be precluded from testifying about these topics under Federal Rule of Evidence 403.  He further argues that the final topic is independently excludable under Federal Rule of Evidence 704(b).

The undersigned agrees that Dr. Clark should not be permitted to testify that she found fraud or indicia of fraud.  Rule 704(b) states:

> In a criminal case, an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense.  Those matters are for the trier of fact alone.

At the *Daubert* hearing, Dr. Clark testified that she used the term "fraud" to reference what she understands to be "medical fraud" as compared to "legal fraud."  It is a close question whether Rule 704(b) would prohibit Dr. Clark from testifying that she identified indicia of fraud in the billing submitted by Snyder's companies; this testimony would not be a direct opinion on *Snyder's* mental state.  Nevertheless, there is a substantial risk that allowing Dr. Clark to use the term "fraud" (as she defines it) would confuse the jury, even in the face of an instruction by the trial court that the jury must only apply the legal definition of "fraud" contained in the jury instructions.  Therefore, pursuant to Fed. R. Evid. 403, Dr. Clark should be precluded from testifying about "fraud" or "indicia of fraud."

That being said, Dr. Clark should be permitted to testify that the patient records and billing records she reviewed demonstrated "excessive" or "medically unnecessary" urinalysis testing and associated billing.  She should also be permitted to testify that the treatment provided to the patients did not meet the applicable standard of medical care and that the billing practices did not conform to industry standards.

Snyder also objects to Dr. Clark testifying that certain treatment, testing, and billing was "proper" or "improper." Snyder argues that this testimony inappropriately suggests "impropriety" or wrongdoing that is beyond Dr. Clark's competence. On this topic, the undersigned believes Snyder reads too much into the terminology. The words "improper" and "proper" do not carry the same inherent potential for prejudice as the word "fraud." If Dr. Clark uses the word "improper" or "proper" in a context that Snyder believes carries an inappropriate inference, the trial judge can give a limiting instruction.

Finally, Snyder objects to Dr. Clark opining that urinalysis testing was used as a "profit center" by Snyder's companies. The Court agrees. Once the underlying facts are admitted into evidence, that conclusion is not beyond the understanding of the average lay person. It is best left for argument by counsel, or for testimony by a fact witness, such as a summary financial witness. Dr. Clark should, however, be allowed to testify to the underlying facts if they are within her knowledge — such as the costs associated with urinalysis testing and the range of insurance payments for testing.

### *Government's Motion in Limine*

The Government moves to exclude (1) "blame the victim" evidence and (2) evidence of "isolated instances of purportedly legitimate billing." The Government also moves to preclude Snyder from asserting an advice of counsel defense unless Snyder provides advance notice of his intention to assert such a defense and provides the materials upon which he will rely for such a defense. DE 189 at 17. The Government's Motion should be denied.

Snyder is charged with offenses that require proof of specific criminal intent. What the Government denotes as "blame the victim" evidence may be relevant to Snyder's state of mind. Similarly, the Government's theory at trial (as articulated in the Indictment and further articulated

9

at oral argument) will be that Snyder's businesses had no (or little) legitimate purpose other than to generate revenue from unnecessary urinalysis testing. Evidence that legitimate services were provided and/or that payment was sought for these legitimate services may negate the Government's theory and may show lack of criminal intent. *See* Fed. R. Evid. 401 (evidence is relevant if it tends to make a fact at issue more or less probable).

The Government fails to cite any authority for the proposition that it is entitled to pretrial notice of an advice-of-counsel defense. The cases cited by the Government relate to the substantive elements of the defense. Although the Federal Rules of Criminal Procedure require prior notice of certain defenses, *see* Fed. R. Crim. P. 12.1 (alibi), 12.2 (insanity), 12.3 (public-authority), they do not require advance notice of an advice-of-counsel defense. Finding no legal basis in the rules of procedure or caselaw, the Court declines to compel advance notice of an advice-of-counsel defense.[1]

**WHEREFORE, it is RECOMMENDED** that:

1. The Motion in Limine to Exclude 404(b) Evidence [DE 175] be **DENIED AS MOOT;**

2. The Motion to Exclude Speculative Testimony Regarding Knowledge of Criminal Activity of Others [DE 176] be **DENIED AS MOOT**;

3. The Motion for Specific Disclosure of 404(b) Evidence [DE 178] be **DENIED AS MOOT;**

4. Snyder's Motion to Exclude 404(b) Evidence [DE 187] be **DENIED;**

---

[1] The Government notes that the time for expert witness disclosure has passed. The undersigned's ruling on the Government's Motion in Limine is without prejudice to the Government seeking other relief should the defense attempt to offer an advice of counsel defense at trial.

5. Snyder's Motion to Exclude "Expert" Testimony of Dr. Kelly Clark be **GRANTED IN PART and DENIED IN PART;**

6. The Government's Motion in Limine [DE 189] be **DENIED.**

### NOTICE OF RIGHT TO OBJECT

A party shall serve and file written objections, if any, to this Report and Recommendation within 14 days after being served with a copy. See 28 U.S.C. § 636(b)(l)(C). Failure to file timely objections "waives a party's right to review." Fed. R. Crim. P. 59(b)(2).

**DONE AND SUBMITTED** in Chambers this 1st day of July, 2019, at West Palm Beach in the Southern District of Florida.

_____
BRUCE E. REINHART
UNITED STATES MAGISTRATE JUDGE